■ SCOTT CRAFT et al., Respondents, v SOPHIA BRANTUK et al., Appellants. [600 NYS2d 251] —In a negligence action to recover damages for personal injuries, the defendants appeal from an order of the Supreme Court, Nassau County (McCabe, J.), entered May 2, 1991, which denied their motion for partial summary judgment dismissing the complaint on the ground that the plaintiff Scott Craft did not sustain a serious injury within the meaning of Insurance Law § 5102 (d).

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.

It is now well settled that when a defendant moves for summary judgment dismissing the complaint based on the plaintiff's failure to establish "serious injury" and relies solely on findings of the defendant's own medical witnesses, those findings must be in admissible form, and not unsworn reports, in order to make a prima facie showing of entitlement to judgment as a matter of law *(see, Pagano v Kingsbury,* 182 AD2d 268, 270; *see also, Miller v Metropolitan Suburban Bus Auth.,* 186 AD2d 116). However, in this case the defendants did not rely solely upon their expert's unsworn report. Rather, the defendants predicated their motion, *inter alia,* upon the plaintiffs' bill of particulars, the plaintiff Scott Craft's deposition testimony, and a medical report prepared at the behest of the plaintiffs. These submissions established that there is no merit to Scott Craft's claim of serious injury *(see, Saladino v Meury,* 193 AD2d 727; *Grier v Kuhn,* 187 AD2d 559; *Michaelides v Martone,* 186 AD2d 544), and the plaintiffs' opposing affidavits failed to rebut that showing *(see, Stadier v Findley,* 148 AD2d 600).

In this case, the plaintiffs' bill of particulars revealed that after being treated at Mid-Island Hospital, Craft was "confined to home for one week". Most significantly, during his examination before trial, Craft virtually undermined all of his serious injury claims. He stated that he was treated at the emergency room, X-Rays were negative, and he was released with only an instruction to take aspirin. He was not given any kind of braces or even a cervical collar at the hospital. He saw his family doctor the following day and the doctor prescribed the same treatment—aspirin. The family physician suggested that he see a specialist and, on the referral of a neighbor, he saw Dr. Martin A. Lehman, an orthopedist. Dr. Lehman personally saw him only three or four times. Dr. Lehman did

give him a cervical collar and a sling for his arm, but he discarded these devices after only one week. He received ultrasound physical therapy in Dr. Lehman's office three times a week, but discontinued that treatment in February 1990 no more than four months after the accident.

Most telling is that Craft missed no more than five to six days of work at his daily jobs and two weekends of weekend fire department duty. He testified at his examination before trial in September 1990 that his left arm was better, and that he had pain and stiffness in his upper back, but that these complaints are at worst intermittent. He testified that the stiffness in his back and neck plagued him "[s]ometimes * * * twice a week, sometimes * * * once a month". Thus, his own testimony established only that he had recurring back pains that affected him only periodically. Therefore he did not make out a prima facie showing of serious injury (see, Gaddy v Eyler, 79 NY2d 955; Traugott v Konig, 184 AD2d 765; Forte v Vaccaro, 175 AD2d 153; Zelenak v Clark, 170 AD2d 677). Thompson, J. P., Miller, Santucci and Joy, JJ., concur.